# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ANDREA WACHOB KAELIN,

    *Plaintiff*,

vs.                                                      CASE NO:

GENESIS HEALTH, INC., d/b/a
BROOKS HEALTH SYSTEM, a
Florida Not For Profit Corporation,

    *Defendant.*
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**<u>INJUNCTIVE RELIEF REQUESTED</u>**

Plaintiff Andrea Wachob Kaelin sues Defendant Genesis Health, Inc., d/b/a Brooks Health System, a Florida Not For Profit Corporation ("Brooks") and alleges:

**I.**    **Nature of action**

1.    Plaintiff Andrea Kaelin's gender discrimination, gender retaliation, and Florida Private Whistle Blower claims arise from her employment with, and termination by, Defendant Brooks. Defendant's

disparate treatment of Ms. Kaelin based on her gender; its retaliation against her for opposing Defendant's unlawful employment practices; and its termination of her employment because she objected to and/or refused to participate in Defendant's unlawful policy and/or practice of gender discrimination, violated Title VII, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"); the Florida Civil Rights Act, § 760.10, <u>Fla</u>. <u>Stat</u>., *et. seq.* ("FCRA"); and the Florida Private Whistle Blower Act, § 448.102(3), <u>Fla.</u> <u>Stat.</u> ("WBA").

## II.     The parties

2.     Ms. Kaelin was employed by Defendant as its Vice President of Human Resources and Learning from January 7, 2019 until her termination on June 24, 2020.

3.     Defendant Brooks sells health care services and physical rehabilitation services, with approximately 2,500 employees.

## III.     Compliance with administrative prerequisites

4.     On August 17, 2020, Plaintiff timely filed her charge of gender discrimination and retaliation with the Equal Opportunity Commission ("EEOC"), and the Florida Commission on Human Relations ("FCHR"). The

EEOC issued a Notice of Right to Sue dated February 19, 2021 which was received by Plaintiff on March 2, 2021.  Plaintiff thereafter timely filed this action.

IV. **Statement of facts**

5. As VP of Human Resources and Learning, Plaintiff reported to Defendant's President and Chief Operating Officer ("COO") who at the time of Ms. Kaelin's employment was Michael Spigel.

6. Ms. Kaelin was responsible for Employee Relations, Benefits, Compensation, Recruitment, HR Technology and Operations, Employee Health, Workers Compensation, Employee Engagement, and Learning and Development.

7. As part of her job, Ms. Kaelin was tasked with assembling a Human Resources team equipped to address and reduce Brooks' employee turnover rate.

8. It was also part of Ms. Kaelin's job duties to ensure that men and women were being treated equally and paid equally for equal work, i.e., to ensure that Brooks was not making compensation decisions based upon gender.

9. During the performance of her job, Ms. Kaelin discovered pay records showing that Defendant was compensating male physical therapist assistants ("PTAs") more than its female PTAs, for performing equivalent work. Ms. Kaelin objected to this unlawful practice to CEO Baer and COO Spigel, and she provided a color-coded chart graphically illustrating the gender-based pay disparity. In response, COO Spigel berated Ms. Kaelin and told her that her Human Resources team and she had "gotten out of [their] lane," for raising and documenting the disparate pay issue, even though it was Ms. Kaelin's job to do so.

10. During her employment, Ms. Kaelin objected to Defendant's CEO, Douglas Baer, and to its Compliance Officer, John Falcetano, about the frequent verbal abuse that COO Spigel directed toward her and other females employed by Defendant. Ms. Kaelin reported that Mr. Spigel used abusive, loud, insulting and inappropriately aggressive language with females, but not with males. To Plaintiff's knowledge, no corrective action was taken by Defendant.

11. Ms. Kaelin objected to CFO Dan Curran's plan to fire a female assistant because of Mr. Curran's assertion that the female assistant was involved in a romantic relationship with her male supervisor. The male

supervisor was a direct report to CFO Curran, and the supervisor earlier had been placed on a performance plan because of the perception that he was having an inappropriate relationship with his female subordinate. But the perception of an ongoing romantic relationship continued after the male supervisor's completion of the performance plan. Ms. Kaelin objected to CFO Curran's plan to fire the female subordinate as a solution to the perceived romantic relationship. But Ms. Kaelin's objection was dismissed by Mr. Curran, who intended to go forward with terminating only the female subordinate. The female subordinate resigned her employment immediately before she was notified of her termination.

12. CEO Baer terminated Ms. Kaelin on June 24, 2020, telling her that she was "not a good fit." Ms. Kaelin repeatedly asked Mr. Baer to explain what he meant and to give her examples, but he refused to do so.

13. Upon concluding that CEO Baer was determined to terminate her employment, Ms. Kaelin asked that she be permitted to "resign," rather than being "terminated" -- a courtesy that had been afforded to other employees terminated by Defendant. CEO Baer refused to afford that same courtesy to Ms. Kaelin, however, because his motive for terminating her was

discriminatory and retaliatory, because she had objected to and documented the gender-based discrimination occurring in Defendant's workplace.

14. Mr. Baer's conclusion that Ms. Kaelin was "not a good fit" was motivated at least in part by Ms. Kaelin's gender/female, and her objections to the gender discrimination she reported at Brooks, as described in paragraphs 9-11.

15. Ms. Kaelin received a $93,000.00 bonus in February 2020, followed by a favorable performance review and salary increase in May 2020, the month before CEO Baer abruptly terminated her allegedly because she was "not a good fit."

16. A few weeks before CEO Baer terminated Ms. Kaelin, he had asked for her input on an upcoming corporate reorganization of the senior levels. Ms. Kaelin provided detailed recommendations regarding titling, structure, responsibilities, and other details. CEO Baer adopted and implemented Ms. Kaelin's recommendations.

17. Defendant has continued to retaliate against Ms. Kaelin after terminating her, falsely claiming to the EEOC, and likely to others, that Ms. Kaelin was terminated for being "unprofessional." Defendant has also

falsely claimed that Ms. Kaelin's $93,000 performance bonus in February 2020 was not related to her performance.

18. Ms. Kaelin has lost earnings and fringe benefits by virtue of Defendant's unlawful conduct as alleged herein.

19. Defendant's unlawful conduct has caused Ms. Kaelin to incur emotional pain, humiliation, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and intangible injuries, to the extent that any other reasonable person would incur such compensatory damages under the circumstances alleged in this Complaint.

20. Ms. Kaelin has retained undersigned counsel and is obligated to pay them a reasonable fee for their services.

**V.   Counts and Relief Sought**

### COUNT I

**(Title VII, Gender Discrimination and/or Retaliation)**

21. Plaintiff re-alleges paragraphs 1 to 20.

22. A motivating factor in Defendant's decision to terminate Ms. Kaelin was her gender/female, and/or to retaliate against her for the

conduct described in paragraphs 9-11, *i.e.*, because she complained of conduct made unlawful under Title VII. Defendant's termination of Plaintiff violated Title VII, 42 U.S.C. § 2000e-2(a)(1) and (2), and § 2000e-3(a).

23. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

## COUNT II

### (FCRA, Gender Discrimination and/or Retaliation)

24. Plaintiff re-alleges paragraphs 1 to 20.

25. A motivating factor in Defendant's decision to terminate Ms. Kaelin was her gender/female, and/or to retaliate against her for the conduct described in paragraphs 9-11, *i.e.*, because she complained of conduct made unlawful under the FCRA. Defendant's termination of Plaintiff violated the FCRA, Sections 760.10(1)(a) and (b), and 760.10(7), Fla. Stat.

## COUNT III

### (Florida Private Whistle Blower Act)

26. Plaintiff re-alleges paragraphs 1-20.

27. Defendant terminated Ms. Kaelin because she objected to, or refused to participate in Defendant's activities, policies, and/or practices in

violation of Title VII and the FCRA, as alleged in paragraphs 9-11. Defendant's termination of Plaintiff violated the Florida Private Whistle Blower Act at Section 448.102(3).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff Andrea Wachob Kaelin demands the following legal and/or equitable/injunctive relief under all three Counts of this Complaint, unless specified otherwise:

a. Lost past earnings, wages, salary, bonuses, and other employment benefits incurred because of Defendant's unlawful termination of Ms. Kaelin's employment (collectively referred to as **"back pay")**

b. Interest on the amount of back pay as of the date of judgment.

c. Retroactive reinstatement to Ms. Kaelin's position or its equivalent, with "back pay" (hereafter collectively referred to as **"retroactive reinstatement"**).

d. In the event retroactive reinstatement is not feasible, then in addition to back pay, Plaintiff demands all earnings, wages, salary, bonuses, and other employment benefits she will lose in the future because of her unlawful termination (hereinafter collectively referred to as **"front pay"**).

  e. Compensatory damages including, but not limited to, compensation for her emotional pain, humiliation, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries allowable by law or equity under Title VII, the FCRA, and/or under the WBA.

  f. Punitive damages as afforded by Title VII at 42 U.S.C. § 1981a (b), and under the FCRA at Fla. Stat. § 760.10(5).

  g. Attorneys' fees and expenses, including expert witness fees as allowed by law, all recoverable statutory costs, and all litigation expenses not otherwise expressly allowed by rule or statute.

  h. All other legal or equitable relief to which Ms. Kaelin is entitled as a matter of law or equity; and,

  i. Trial by jury of all issues so triable.

Respectfully submitted,

s/Scott Thomas Fortune
FORTUNE LAW OFFICES, PA.
Scott Thomas Fortune,
Trial Counsel for Plaintiff
Florida Bar No. 342815
SFortune@FortuneLegal.com
1807 3rd Street North
Jacksonville Beach, Florida 32250
Telephone: (904) 246-2125
Mobile: (904) 333-3965
Facsimile: (904) 246-1551

Attorneys for Plaintiff